UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>ABDULRAHMAN AYMAN ALAWAD,<br>Defendant. | Case No.: ___________________<br>**I N F O R M A T I O N**<br>Title 18, U.S.C., Sec. 1343 – Wire Fraud; Title 18, U.S.C., Sec. 1957 – Money Laundering; Title 18, U.S.C., Secs. 981(a)(1)(A), (C), 982(a)(1), (2) and Title 28, U.S.C., Sec. 2461(c) and Title 21, U.S.C., Sec. 853 - Criminal Forfeiture |

The United States Attorney charges:

At all times relevant to this Information:

**INTRODUCTION**

1. The United States Department of Health and Human Services ("HHS") provided federal funding to states, including the State of California, to help low-income families pay for childcare expenses.

2. In California, four programs provided subsidies to childcare providers servicing income-eligible families: CalWORKs Stage 1, CalWORKs Stage 2 Alternative Payment ("C2AP"), CalWORKs Stage 3 Alternative Payment ("C3AP"), and California Alternative Payment Program ("CAPP").

3. In the Southern District of California, the County of San Diego administered "Stage 1" subsidies, and two community organizations,

Child Development Associates ("CDA") and the Young Men's Christian Association ("YMCA"), administered subsidies through the C2AP, C3AP, and CAPP.

4. Generally, if CDA or YMCA determined that a family was eligible to receive subsidized childcare services and the family's selected childcare provider (i) registered with CDA or YMCA, (ii) had an active license to provide care at an approved facility from the State of California Department of Social Services ("CDSS"), and (iii) submitted monthly attendance records documenting the childcare they provided, CDA and YMCA paid subsidies directly to the childcare provider, via check or direct deposit, for providing childcare to registered income-eligible families.

5. Monthly attendance record forms had "self-certification" and signature sections for both the childcare provider and the parent, both of which began, "I declare under penalty of perjury that the information provided on this attendance record is true and correct[.]" Without a completed and signed attendance record, CDA and YMCA did not issue payment to registered childcare providers.

6. CDA and YMCA used a third-party software company to transmit blank monthly attendance records forms to childcare providers. The attendance record forms included the childcare provider's name, the child's name, the parent's name, and a table for entering the child's "Time In" and "Time Out" on each day of the month.

7. Childcare providers could submit completed attendance record forms to CDA and YMCA in-person, via mail, or through a software application. All submissions resulted in a copy of the completed attendance record being transmitted, over interstate wire communications, to the third-party software company's servers in Oregon.

8. California regulations stated in part, "The licensee shall be present in the home and shall ensure that children in care are supervised at all times. When circumstances require the licensee to be temporarily absent from the home, the licensee shall arrange for a substitute adult to care for and supervise the children during his/her absence. Temporary absences shall not exceed 20 percent of the hours that the facility is providing care per day." Cal. Code Regs. Tit. 22, § 102417(a).

9. Defendant ABDULRAHMAN AYMAN ALAWAD, a resident of the Southern District of California, operated "Alawad, Abdulrahman Family Child Care" at an apartment on 47th Street in San Diego, within the Southern District of California. The license, effective May 23, 2022, authorized ALAWAD to provide care for up to eight children at the facility on 47th Street.

10. Following an application for a "location change" and "capacity change," Defendant ALAWAD received a license from CDSS to operate "Alawad, Abdulrahman Family Child Care" at an address on Reno Drive in San Diego, California, within the Southern District of California. The license, effective April 10, 2023, authorized ALAWAD to provide care for up to 14 children at the facility on Reno Drive.

**Counts 1-4**

**(Wire Fraud)**

**[18 U.S.C. § 1343]**

11. Paragraphs 1 to 11 are re-alleged and incorporated herein.

12. Beginning on a date unknown, but no later than in or about May 2022, and continuing up to and including on or about July 1, 2026, within the Southern District of California and elsewhere, defendant ABDULRAHMAN AYMAN ALAWAD, knowingly and with the intent to defraud, devised, participated in, and executed a material scheme and artifice to defraud and to obtain money and property by means of materially false and

fraudulent pretenses, representations, and promises, and intentional concealment and omission of material facts.

**Manner and Means**

13. The fraudulent scheme and artifice to defraud was operated and was carried out, and to be carried out, in substance, as follows:

14. Defendant ALAWAD applied for and received from CDSS licenses to operate childcare facilities in the Southern District of California.

15. After obtaining licenses from CDSS, defendant ALAWAD registered with CDA and YMCA as the childcare provider for families that received subsidized childcare services.

16. Defendant ALAWAD, using the third-party software, accessed and printed blank monthly attendance records for each child ALAWAD was registered with CDA or YMCA as the childcare provider.

17. Defendant ALAWAD submitted to CDA and YMCA completed attendance records for each child ALAWAD had purportedly provided childcare to in the preceding month and certified under penalty of perjury the accuracy of the dates and times he provided care to a child.

18. Defendant ALAWAD, to obtain payment from CDA and YMCA, knowingly submitted and caused to be submitted attendance records containing materially false and fraudulent statements, specifically the dates and times he purportedly provided childcare to the children identified in the attendance records, and his false certification under penalty of perjury that that the information in the attendance records was true and correct.

19. Defendant ALAWAD submitted his attendance records to CDA and YMCA, both of which processed the records through the same third-party software and thereby caused interstate wire communications, specifically

the transmittal of the attendance records to the third-party software company's server in Oregon.

20. CDA and YMCA relied on defendant ALAWAD's false and fraudulent statements in the attendance records and remitted payment to ALAWAD based on his materially false and fraudulent representations, promises, and intentional concealment and omission of material facts. In doing so, ALAWAD obtained funds from the United States Government that were intended to pay for childcare actually provided to low-income families.

**Use of the Wires**

21. On or about the dates set forth below, within the Southern District of California and elsewhere, defendant ABDULRAHMAN AYMAN ALAWAD, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, knowingly transmitted and caused to be transmitted by wire communications in interstate and foreign commerce, certain writings, signs, signals, and sounds as more particularly described below:

| Count | Approximate Date | Interstate Wire |
|---|---|---|
| **1** | April 2, 2026 | Electronic submission of March 2026 Attendance Record for Child 1 |
| **2** | April 2, 2026 | Electronic submission of March 2026 Attendance Record for Child 2 |
| **3** | May 4, 2026 | Electronic submission of April 2026 Attendance Record for Child 1 |
| **4** | May 4, 2026 | Electronic submission of April 2026 Attendance Record for Child 2 |

All in violation of Title 18, United States Code, Section 1343.

///

///

///

**Count 5**

**(Money Laundering)**

**[18 U.S.C. § 1957]**

22. Paragraphs 1 to 21 are re-alleged and incorporated herein.

23. On or about May 23, 2025, within the Southern District of California, defendant ABDULRAHMAN AYMAN ALAWAD did knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, and which was derived from specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343, to wit: the wire transfer of $335,522.61 from Bank of America account -4864 to Axos Bank account -0202 in connection with the purchase of real property at 1916 Grove Road, El Cajon, California 92020, all in violation of Title 18, United States Code, Section 1957.

**FORFEITURE ALLEGATIONS**

The allegations set forth in Counts 1 through 5 of this Information are realleged and incorporated as a part hereof for purposes of seeking forfeiture of property pursuant to Title 18, United States Code, Sections 981(a)(1)(A)&(C), 982(a)(1), and 982(b), and Title 28, United States Code, Section 2461(c).

Upon conviction of one and more of the offenses in violation of Title 18, United States Code, Section 1343 set forth in Counts 1 through 4 of this Information, defendant ABDULRAHMAN AYMAN ALAWAD shall forfeit to the United States of America, pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(A), and Title 28, United States Code, Section 2461(c) and Title 21, United States Code, Section 853, all property, real and personal, which constitutes or is derived

from proceeds of the offenses and all property traceable to such property, and all facilitating property, including but not limited to the specific real property at 1916 Grove Road, El Cajon, California 92020.

Upon conviction of the offense in violation of Title 18, United States Code, Section 1957 as set forth in Count 5 defendant ABDULRAHMAN AYMAN ALAWAD shall forfeit to the United States all property involved in the offense pursuant to Title 18, United States Code, Sections 981(a)(1)(A) and 982(a)(1). The property to be forfeited includes but is not limited to real property at 1916 Grove Road, El Cajon, California 92020.

If any of the forfeitable property, as a result of any act or omission of the Defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the Defendant up to the value of the forfeitable property.

All pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and 982(a)(2)(B), and Title 28, United States Code, Section 2461(c).

///

///

///

DATED: September 30, 2026.

ADAM GORDON
United States Attorney

*Eric R. Olah*
ERIC R. OLAH
Assistant U.S. Attorney